IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMIE LYNN THAYER,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:20-CV-01125-DAP<br><br>JUDGE DAN AARON POLSTER<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

### INTRODUCTION

Plaintiff Jamie Lynn Thayer ("Ms. Thayer") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the magistrate judge for preparation of a report and recommendation pursuant to Local Rule 72.2, and reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend that the Court **AFFIRM** the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Ms. Thayer filed for DIB on August 25, 2017, alleging a disability onset date of April 5, 2017. (Tr. 175-76). Her claims were denied initially and upon reconsideration. (Tr. 108-110). She then requested a hearing before an administrative law judge. (Tr. 120-21). Ms. Thayer (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on January 15, 2019. (Tr. 31-77). On April 23, 2019, the ALJ found Ms. Thayer not disabled in a written

decision. (Tr. 12-30). The Appeals Council denied Ms. Thayer's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6). *See* 20 C.F.R. §§ 404.955 & 404.981. Ms. Thayer timely filed this action on May 22, 2020. (ECF #1).

## FACTUAL BACKGROUND

### I. ADMINISTRATIVE HEARING

At the administrative hearing, Ms. Thayer testified she lived with her fiancé and had shared custody of her son on occasional weekends; she also lived with and cared for her fiancé's children, who were also in a shared custody arrangement. (Tr. 39-40). In addition to caring for the children, Ms. Thayer would also care for and feed her cats and dogs. (Tr. 40-41). Ms. Thayer testified she was able to complete chores and clean around the house, although her ability to do so in a consistent and healthy way was impacted by her obsessive-compulsive disorder ("OCD"). (*Id.*). Her fiancé helped with other chores, such as grocery shopping, because her agoraphobia prevented her from being in public. (Tr. 41-42). Ms. Thayer testified she copes with the symptoms of her OCD by walking and actively moving around and by spending time with her dog. (Tr. 42-44). She testified she has hobbies she enjoys, such as camping with family, writing, coloring, and caring for her plants. (Tr. 45-46).

Ms. Thayer testified her past work was in packaging and involved gathering orders from a pick list. (Tr. 48). This was an active job and required her to stay on her feet and regularly lift up to 40 pounds. (Tr. 48-49). She testified that her OCD made this job difficult at times because she would "get stuck" making sure the items were facing the same direction or fit in a certain way. (*Id.*).

After a few months, Ms. Thayer was moved from the packaging department to the office, where she did customer service and data entry. (Tr. 49-50). Ms. Thayer stated that her OCD

presented in a tendency to "fix things," which then created issues for her ability to work because she was "not management" but was compelled to do tasks that were "above and beyond [her] job description." (Tr. 51). Ms. Thayer was then moved to production planning. (Tr. 52). However, according to Ms. Thayer, this additional responsibility, along with the looming prospect of her factory being relocated to Columbus, became too much to handle and she suffered a mental breakdown. (Tr. 52-54). She was hospitalized for four days, and then began receiving treatment for her mental health. (Tr. 54). After this incident, Ms. Thayer received short-term disability for a period of three months. (*Id.*). Ms. Thayer also testified to having other administrative and data entry positions, which usually involved little interaction with customers. (Tr. 54-58).

Ms. Thayer also testified she was on a medication regimen that helped stabilize her mood with few side effects. (Tr. 59). She also testified she had been diagnosed with bipolar disorder, but had been able to control her symptoms without medication for eleven years. (Tr. 59). Ms. Thayer had attempted to obtain work accommodations for her mental health issues, but was unable to do so. (Tr. 62-63). According to her testimony, this lack of accommodation resulted in absenteeism that ultimately led to termination. (Tr. 62-64). Since September of 2018, Ms. Thayer had been attending group therapy sessions for three and a half hours, three times a week. (Tr. 66). Even with this intensive therapy, coupled with medication, Ms. Thayer testified that her "moods change on a daily basis." (Tr. 67).

The VE then testified. Although the VE's resume was not in the file, Ms. Thayer's attorney did not object to the VE testifying and stipulated to the VE offering her opinion in Ms. Thayer's case, saying "I will stipulate to her offering her opinion today as I've done for her in your court many times before." (Tr. 70-71). The VE testified that Ms. Thayer's past work was classified as

3

follows: hand packager, SVP 2, medium; customer service (classified as order clerk), SVP 4, sedentary; planner, SVP 4, sedentary; and administrative clerk, SVP 4, light (but performed at a sedentary level). (Tr. 72-73).

The ALJ then asked the VE to consider the following hypothetical individual: a person with the same age, education, and past work as Ms. Thayer, who has no exertional limitations and can perform simple, routine tasks, consistent with unskilled work, with no fast pace or high production quotas, only occasional superficial interaction, and who can perform work with infrequent change where changes are explained in advance and gradually implemented. (Tr. 73). The VE testified this hypothetical individual would not be able to work in Ms. Thayer's past work. (*Id.*). The VE indicated, however, that such a hypothetical individual could work as a kitchen helper (medium, unskilled, SVP 2) or as a merchandise marker (light, unskilled, SVP 2), or as a housekeeping cleaner (light, unskilled, SVP 2), who is not required to interact with the public as part of the job. (Tr. 73-74). The ALJ asked if these jobs could be performed even if limited to only low-stress work, which the ALJ affirmed. (Tr. 74-75). If the individual would be off task twenty percent or more, or would need to be absent two or more times per month, then work would be precluded. (*Id.*).

II. PERSONAL AND VOCATIONAL EVIDENCE

Ms. Thayer was 35 years old on the alleged onset date of her disability; she was therefore defined as a younger individual age 18-49 (Tr. 24; *see also* 20 C.F.R. §§ 404.1563). Ms. Thayer had past relevant work as a Hand Packager, Planner, and Administrative Clerk; this work was "substantial gainful activity" under the Act, was performed long enough for Ms. Thayer to achieve average performance, and was performed within the relevant period. (Tr. 24; *see also* 20 C.F.R.

4

§ 404.1565). Given her residual functional capacity, her past relevant work could no longer be performed. (Tr. 73). Accordingly, Ms. Thayer was unable to perform past relevant work. (*Id.*).

### III. RELEVANT MEDICAL EVIDENCE

**Highland Springs Hospital.** On April 6, 2017, Ms. Thayer was admitted to Highland Springs Hospital for psychiatric care. (Tr. 281-323). The police brought her to Highland Springs after she threatened to kill herself with a paring knife. (Tr. 283, 289). Ms. Thayer stated the precipitating event was a "difficult day at work" and described racing thoughts, restless sleep, weight loss, inability to focus, high anxiety, and increasing irritability. (*Id.*). Although she had been able to control her bipolar disorder for ten years without medication, she had been prescribed Remeron (an antidepressant) five days earlier. (*Id.*). On intake, her mental status examination indicated she had tangential thought processes, fair insight, and poor judgment, but she appeared otherwise alert and oriented. (Tr. 293). Amanda Horrigan, M.D., treated her with Seroquel, an antipsychotic. (Tr. 283, 289). Adding Seroquel to her regimen appeared to induce a "rapid turnaround" and Ms. Thayer described "improved sleep, decreased racing thoughts, decreased restlessness and thinking more clearly." (*Id.*). She denied any agitation and had good self-care, hygiene, grooming, and was pleasant and appropriate. (*Id.*). When discharged on April 9, 2017, she presented a "low risk to self or others." (*Id.*).

**Dr. Wagner.** Ms. Thayer was seen by Timothy Wagner, D.O., on April 14, 2017, for assistance in completing her FMLA paperwork. (Tr. 334-40). Dr. Wagner diagnosed Ms. Thayer with anxiety, depression, bipolar disorder, and separation anxiety disorder with manic bipolar tendencies. (Tr. 335). Dr. Wagner noted Ms. Thayer's "chronic" mental health condition and described her "dysphoric mood, negative symptoms and somatic symptoms" but indicated that her

5

mood had been improving over the past month. (Tr. 334). Ms. Thayer attended a follow-up appointment on May 5, 2017, in which Dr. Wagner noted that her nervousness/anxiety was under better control. (Tr. 332). Later visits on June 5 and July 27, 2017 indicate that Ms. Thayer's speech was rapid and pressured, but other psychiatric symptoms were normal and that she was gradually improving. (Tr. 330-31, 326). She was receiving medication management from the psychiatry department, but had not yet been released to return to work. (Tr. 326).

**Charak Center.** Ms. Thayer received outpatient mental health treatment from the Charak Center starting in June 2017. (Tr. 406-53). Despite some "ups and downs," progress notes in 2017 indicate improved symptoms, including "mild" depression and anxiety. (Tr. 432, 424). Again, she was responding well to current medications, although stress could exacerbate her symptoms. (Tr. 401). A mental RFC assessment by Vinod Bhandari, M.D., on November 10, 2017, indicated that Ms. Thayer had severe anxiety and poor stress tolerance, but that she was able to care for her own needs effectively and without impairments. (Tr. 402-03). In a subsequent report, Ms. Thayer was documented as "much improved" on January 8, 2018, she was compliant with her medications, and self-reported fewer violent outbursts. (Tr. 409). She had, however, experienced limitations in thinking clearly, relating to others, racing thoughts, and functioning independently due to the severity of her symptoms. (*Id.*).

Another assessment completed on September 12, 2018, by Ann Marie Yezzi-Shareef, Ph.D., indicates that Ms. Thayer was being seen 3-4 days per week, and would need continued treatment at that frequency. (Tr. 455). Dr. Yezzi-Shareef indicated Ms. Thayer had no useful ability to function in a work setting and would be off-task for 80-100 percent of the time. (*Id.*).

A letter dated January 29, 2019, from Margret Bialowas, M.Ed., LPCC, indicated that from September 4, 2018 through November 7, 2018, Ms. Thayer participated in Mental Health Day Treatment. (Tr. 504). While in treatment, Ms. Thayer learned therapeutic skills such as Cognitive Behavioral Therapy and Dialectical Behavior Therapy. (*Id.*). Ms. Thayer participated in group sessions and reported implementing these skills. (*Id.*). But Ms. Thayer did not successfully complete this treatment due to inconsistent attendance in group and individual therapy sessions. (*Id.*).

### THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since April 5, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder, generalized anxiety disorder, obsessive compulsive disorder, and unspecified agoraphobia (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple routine tasks consistent with unskilled work with no fast pace or high production quotas; with occasional superficial interaction (meaning of short duration for a specific purpose) with coworkers and supervisors; no direct work with the general public; can perform work with infrequent change where changes are explained in advance with gradual implementation; can perform low stress work meaning no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility.

7

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 31, 1981 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 5, 2017, through the date of this decision (20CFR 404.1520(g)).

(Tr. 17-26).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*,

make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Ms. Thayer asserts the ALJ erroneously failed to properly evaluate the totality of the evidence in the record. (Pl.'s Br., ECF #14, PageID 590-91). Ms. Thayer also asserts the ALJ committed harmful error in her credibility determination, because it was not supported by substantial evidence and violated Social Security Ruling (SSR) 16-3p. (*Id.* at PageID 599). Finally, Ms. Thayer asserts the ALJ erred by failing to include certain limitations in the RFC, resulting in an RFC not supported by substantial evidence. (*Id.* at PageID 601-02). The Commissioner opposes each of Ms. Thayer's assertions. (Def.'s Br., ECF #17, PageID 619-24). I address each in turn.

**I.     The ALJ committed no reversible error evaluating the evidence in the record.**

Ms. Thayer argues the ALJ erred when evaluating the evidence in the record, and that the ALJ's findings were not supported by substantial evidence. (Pl.'s Br., ECF #14, PageID 590-91). Specifically, she alleges the ALJ did not properly review the "B" criteria of Listings 12.04 (depressive, bipolar, and related disorders) and/or 12.06 (anxiety and obsessive-compulsive disorders), and that her symptoms were demonstrably worse than the "moderate" limitations the

10

ALJ found. (*Id.*). Ms. Thayer then provides an extensive rehashing of the record to demonstrate why she believes substantial evidence does not support the ALJ's finding of moderate impairment, and why the ALJ should have afforded different levels of persuasiveness to the medical opinions in the record. (*Id.* at PageID 590-99).

In response, the Commissioner points to the highly deferential standard this Court must apply when reviewing an ALJ's factual findings. (Def.'s Br., ECF #17, PageID 619-20). Moreover, the Commissioner asserts the ALJ sufficiently explained the supportability and consistency (or lack thereof) found in the medical opinions and that Ms. Thayer's assertion asks this Court to reweigh the evidence. (*Id.* at PageID 622-26). I agree with the Commissioner.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). An ALJ's factual findings are conclusive on review, if supported by substantial evidence and correctly-applied legal standards. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence presupposes there is a "zone of choice" within which the Commissioner may act without interference from the courts. *White*, 572 F.3d at 281-82 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)). This court must affirm an ALJ's decision when it is supported by substantial evidence. *Id.*

Although Ms. Thayer attempts to point out alleged errors made by the ALJ, these challenges fail to overcome the deferential standard this Court must apply. The ALJ discussed Ms. Thayer's complaints and her medical record, noting that Ms. Thayer often responded well to treatment and appeared to improve. (Tr. 21-23). The ALJ noted that Ms. Thayer was prescribed Seroquel, which "had the rapid effect of improved sleep, decreased racing thoughts, decreased

11

restlessness, and more clear thinking." (Tr. 21). Some records indicated that Ms. Thayer had been cleared for work, but that she did not wish to return to work. (*Id.*). Records from December 2017 indicate that her manic episodes had decreased and were not as violent, and that she had only mild depression and no panic attacks, phobias, mood swings, anxiety, racing thoughts, sleep disturbances, or concentration changes. (*Id.*). Her condition in 2018 appeared to be mixed, and she had periods where she did not take her prescribed medications. (Tr. 21-22). When she was taking her medications, however, Ms. Thayer's symptoms would improve. (*Id.*). The ALJ considered Ms. Thayer's conditions—bipolar disorder, agoraphobia, obsessive compulsive disorder, and anxiety disorder—and included responsive limitations in the RFC. (Tr. 22).

This is not a comprehensive review of Ms. Thayer's condition, or of the evidence the ALJ outlines in her decision, but it is sufficient to support the ALJ's conclusion. I decline to re-weigh the evidence.

II.     **The ALJ's findings were supported by substantial evidence and did not violate SSR 16-3p.**

Ms. Thayer alleges the ALJ erred in her credibility determination because it was not supported by substantial evidence, in violation of SSR 16-3p. (Pl.'s Br., ECF #14, Page ID 599-601). The Commissioner argues that the ALJ properly applied the appropriate regulations and provided sufficient justification for her findings. (Def.'s Br., ECF #17, PageID 620-33).

SSR 16-3p describes the two-step evaluation process for evaluating an individual's symptoms. In step one, the Commissioner determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. In step two, the Commissioner evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to

12

perform work-related activities. *Id.* At the second stage, the ALJ may consider evidence directly from the claimant, or gleaned from other medical and non-medical sources (such as family and friends). *Id.*

An ALJ is to consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ must also determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* The ALJ is not required to accept the claimant's subjective complaints, and may discount the claimant's subjective testimony when the ALJ deems it inconsistent with objective medical and other evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ need not use any "magic words," as long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617-JDG, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021). The ALJ's evaluation of subjective evidence receives broad deference from the reviewing court. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). This Court may not disturb the ALJ's analysis of the claimant's subjective complaints, and the conclusions drawn from it, absent compelling reason. *Id.* (internal quotations and citations omitted).

In my opinion, based on a review of the entirety of the record, the ALJ properly evaluated Ms. Thayer's subjective complaints and sufficiently articulated the reasoning throughout the decision. (*See* Tr. 19-23). The ALJ's decision notes Ms. Thayer's symptoms, but weighs them against Ms. Thayer's apparent ability to live with her fiancé, take care of chores, garden, go out to dinner with her fiancé, visit with family, occasionally go grocery shopping, and go camping. (*Id.*). The ALJ also provided reasoning for the decision to discount certain medical records, such as those provided by Dr. Anne Marie Yezzi-Shareef, which stated that Ms. Thayer had no useful ability to function and would be off task 80-100 percent of the time. (Tr. 23). In contrast, the ALJ found Ms. Thayer was able to go camping with her son, out to dinner with her fiancé, and was able to visit her grandmother regularly, and that her concentration was later noted as normal. (*Id.*). This articulation and comparison with the record complies with SSR 16-3p. I find no basis to disturb the ALJ's analysis of Ms. Thayer's subjective complaints.

### III. The ALJ's decisions satisfied Step Five of the sequential evaluation process.

Ms. Thayer argues the ALJ failed to include limitations suggested by Dr. Bhandari's completed questionnaire in the RFC, and as such, did not meet the burden at Step Five of the sequential evaluation. (Pl.'s Br., ECF #14, PageID 601-03). She also revives prior objections to the VE's testimony—objections brought as post-hearing motions, but not made at the hearing. (*Id.* at 603; *see also* Tr. 25-26, 70-71, 250-62). The Commissioner contends the VE's testimony provides substantial evidence to support the ALJ's decision, and that Ms. Thayer waived any later objections by failing to raise them at the hearing. (Def.'s Br., ECF #16, PageID 630-33). I first address the objections to the VE's testimony, and then proceed to the merits of the RFC evaluation.

14

In some circumstances, an ALJ may supplement the record by adjourning a hearing and continuing at a later date, conducting a supplemental hearing, or reopening the record to receive additional evidence. HALLEX I-2-6-80. Exercising this discretion is appropriate when certain testimony has taken the claimant by surprise, and the evidence is such that the claimant is not prepared to respond. *Id.* Failure to object to evidence presented at the hearing or the failure to cross-examine a VE precludes the claimant from raising the issue in post-hearing motions. *Zimmerman v. Comm'r of Soc. Sec.*, No. 1:18-CV-1233, 2019 WL 4736267, at *8 (N.D. Ohio Sept. 27, 2019) (collecting cases). In *Zimmerman*, claimant's counsel stipulated to the VE's qualifications to testify, questioned the VE during the hearing, and did not bring any objections until after the hearing. *Id.* at *7-*8.

For the same reasons the *Zimmerman* Court rejected the claimant's arguments (*see id*), I do the same here. Ms. Thayer's counsel stipulated to the VE's testimony during the hearing, indicating on the record that he had worked with that VE "many times before." (Tr. 71). Counsel also had the opportunity to question the VE and did so. (Tr. 76). VE testimony at hearings is common, and here, the VE's testimony does not present the kind of unanticipated surprise to which a claimant would or should be unprepared to respond. Ms. Thayer's due process rights were not materially prejudiced and the ALJ committed no error in relying on the VE's testimony in determining Ms. Thayer's RFC.

In the five-step sequential analysis, the claimant has the burden of proof in Steps One through Four, but at Step Five, the burden shifts to the Commissioner to establish whether the claimant has the RFC to perform work available in the national economy. *Walters*, 127 F.3d at 529. To meet this burden, the ALJ must make a finding, supported by substantial evidence, that

15

the claimant has the vocational qualifications to perform specific jobs. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal quotations omitted). The ALJ is responsible for evaluating the medical evidence and the claimant's testimony to form an assessment of RFC. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). The RFC is to be an assessment of the claimant's remaining capacity for work, once the claimant's limitations have been factored in. *Id.* at 632 (internal quotations omitted). An ALJ may also rely on a VE's testimony in reaching this conclusion, so long as it accounts for the claimant's limitations. *Id.* (quoting *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d. 777, 780 (6th Cir. 1987)). This, however, does not mean that a hypothetical posed to the ALJ must include a listing of all of the claimant's medical impairments. *Id.* Nor does it impose on the ALJ a requirement to include all limitations proposed in the evidence. *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010). An ALJ may reject limitations and "is only required to incorporate those limitations which he has deemed credible." *Id.*

> Here, the ALJ presented the following hypothetical to the VE:
>
>> I would like you to consider a person with the same age, education and past work as the claimant who has no exertional limitations and that this hypothetical individual can perform simple, routine tasks, consistent with unskilled work with no fast pace or high production quotas and with occasional superficial interaction. And by superficial I mean of a short duration for a specific purpose with both coworkers and supervisors and no direct work with the general public. And finally, can perform work with infrequent change where changes are explained in advance and gradually implemented. Given such a hypothetical individual, first off, would this hypothetical individual be able to perform the claimant's past work as those occupations are either generally and/or actually performed?

(Tr. 73). In response, the VE testified to available jobs as a kitchen helper, merchandise marker, and a housekeeping cleaner. (Tr. 73-74). The VE added an additional limitation to represent only

16

those housekeeping cleaners who would not be required to interact with the public. (*Id.*). Even with this additional limitation, she testified that jobs would be available in the national economy. (*Id.*). The ALJ then inquired whether those same jobs would be available if the hypothetical individual would need to be off task 20 percent or more, or if the individual would be absent, arrive late, or leave early two or more times per month, due to mental health symptoms. (Tr. 74-75). At that point, the VE testified that no work would be available in the national economy for such an individual. (*Id.*). Using this, in part, the ALJ created an RFC with the following limitations:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple routine tasks consistent with unskilled work with no fast pace or high production quotas; with occasional superficial interaction (meaning of short duration for a specific purpose) with coworkers and supervisors; no direct work with the general public; can perform work with infrequent change where changes are explained in advance with gradual implementation; can perform low stress work meaning no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility.

(Tr. 19).

Ms. Thayer contends the RFC should have included the 20 percent off task or two days per month limitations suggested in her testimony and supported by the treating medical experts. (Pl.'s Br., ECF #14, PageID 602-03). In fact, the ALJ did consider this evidence, and described in the decision why she found the extreme limitations suggested (for example, that Ms. Thayer would be off task up to 100 percent of the workday) not credible. (Tr. 19-24). Instead of including such limitations wholesale, the ALJ discussed Ms. Thayer's subjective complaints, compared them against the record, and created an RFC with limitations specific to Ms. Thayer—such as limiting to

only low stress work, with no supervisory responsibility. (Tr. 19). The RFC is for the ALJ alone to determine. 20 C.F.R. § 416.927(e)(2); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). I find no basis for overturning the ALJ's decision concerning Ms. Thayer's RFC.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I find the Commissioner's decision denying DIB supported by substantial evidence and recommend the decision be **AFFIRMED.**

Dated: September 21, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).**